O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EMPIRE LAND, LLC [Debtors] RICHARD K. DIAMOND, Chapter 7 Trustee,<br><br>           Plaintiff,<br><br>  v.<br><br>EMPIRE PARTNERS, INC., a California corporation, JAMES PREVITI, LARRY R. DAY, NEIL MILLER, PAUL ROMAN, O'MELVEY & MYERS, LLP, a limited liability partnership, PETER HEALY,<br><br>           Defendants. | Case No. CV 12-00193 DDP [Bankruptcy Case No.: 6:08-14592-MJ / Adversary No. 6:10-ap-01319-CB]<br><br><br><br>**ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE**<br><br><br>[Dkt. 36] |

    Presently before the court is Defendants Empire Partners, Inc., James P. Previti, Larry R. Day, and Neil Miller (collectively, "Defendants")' Motion to Withdraw the Reference of an adversary proceeding to the bankruptcy court. Having considered the submissions of the parties, the court denies the motion.

    Bankruptcy proceedings fall into three categories: those that

arise under Title 11, those that arise in a Title 11 case, and those that are merely "related to" a Title 11 proceeding. Stern v. Marhsall, 564 U.S. 462, 473 (2011). Cases falling under the former two categories are known as "core" proceedings, while cases that are only related to a Title 11 proceeding are "non-core." Executive Benefits Ins. Agency v. Arkison, 134 S.Ct. 2165, 2170 (2014); 28 U.S.C. § 157(b). District courts may refer any bankruptcy proceedings, whether core or non-core, to the Bankruptcy Court. 28 U.S.C. § 157(a); Stern, 564 U.S. at 474.

Generally, a bankruptcy judge may hear and enter final judgments in core proceedings, but in a non-core proceeding, may only submit proposed findings and conclusions of law to the district court, which then enters final judgment. Stern, 564 U.S. at 474-75; 28 U.S.C. § 157(c)(1). A bankruptcy judge may, however, "with the consent of all the parties to the proceeding, . . . hear and determine and . . . enter appropriate orders and judgments . . . ." 28 U.S.C. § 157(c)(2); Executive Benefits, 134 S.Ct. at 2172. The Stern court held that although certain particular claims may be labeled by Congress as "core" bankruptcy proceedings under 28 U.S.C. § 157(b), the Constitution nevertheless does not permit a bankruptcy judge to adjudicate those claims. Id.; Stern, 564 U.S. at 503. Instead, the bankruptcy judge must treat these ostensibly core "Stern claims" as she would a non-core claim. Executive Benefits, 1324 S.Ct. at 2172-73.

In Wellness Int'l Network, Ltd. v. Sharif, 135 S.Ct. 1932 (2015), the Supreme Court addressed the question whether parties can consent to a bankruptcy judge's adjudication of a Stern claim in the same manner as parties can consent to adjudication of a

2

traditional non-core claim. <u>Wellness</u>, 135 S.Ct. at 1939. The Court answered the question in the affirmative, holding that "allowing bankruptcy litigants to waive the right to Article III adjudication of <u>Stern</u> claims does not usurp the constitutional prerogatives of Article III courts." <u>Id.</u> at 1944-45.

More importantly, for purposes of the instant motion, the <u>Wellness</u> court went on to clarify that neither the Constitution nor 28 U.S.C. § 157 mandates that a party <u>expressly</u> consent to bankruptcy court adjudication. <u>Wellness</u>, 135 S.Ct. at 1947. "The implied consent standard . . . supplies the appropriate rule for adjudications by bankruptcy courts under § 157." <u>Id.</u> at 1948. "[T]he key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." <u>Id.</u> (internal quotation and citation omitted). <u>Id.</u>; <u>see</u> <u>also</u> <u>In re Bellingham Ins. Agency, Inc.</u>, 702 F.3d. 553, 567 (9th Cir. 2012) (discussing party's implied consent to permit a bankruptcy judge "to decide finally").

Here, the parties do not dispute that the only remaining issues in the adversary proceeding are non-core. The parties do dispute, however, whether Defendants have impliedly consented to bankruptcy court jurisdiction over this matter. As the <u>Wellness</u> court observed, determinations whether a party in fact consented to bankruptcy court jurisdiction may "require a deeply factbound analysis of the procedural history" of a particular case. <u>Wellness</u>, 135 S.Ct. at 1949.

The procedural history of this case is long and complex. The underlying adversary proceeding is one of three related adversary

3

proceedings in bankruptcy court, and involves claims for breach of fiduciary duty related to several allegedly fraudulent transfers also at issue in the other two adversary proceedings. Defendants argue that they have consistently stated in their filings that they do not consent to the entry of final orders or judgments by the bankruptcy judge, and have requested a jury trial. (Motion at 16-17.) Parties do, however "sometimes change such positions to avoid the expense, delay, and inconvenience of *de novo* proceedings [before a district court], or for any other reasons." In re AWRT Liquidation Inc., 547 B.R. 831, 840 (Bankr. C.D. Cal. 2016). Although Plaintiff does not ask that this Court make a finding that Defendants impliedly consented to bankruptcy court jurisdiction, Plaintiff argues that consent may be inferred from Defendants' filing of numerous motions before the Bankruptcy Court, including a motion to dismiss and a dispositive motion for summary judgment, which were both denied, as well as a motion to exclude an expert witness, a discovery motion, and a motion barring Plaintiff from seeking damages. (Opposition at 15.)

A showing of "sandbagging," i.e. belatedly raising an objection to jurisdiction only if and when a matter is not decided in a party's favor, is sufficient to show implied consent, but is not necessary. In re Pringle, 495 B.R. 447, 458 (B.A.P. Ninth Cir. 2013). In such straightforward cases, a party's knowing failure to object and purposeful participation in the bankruptcy court proceeding does constitute consent to bankruptcy court jurisdiction. Id.; see also In re. Washington Coast I, L.L.C., 485 B.R. 393, 409-410 (B.A.P. Ninth Cir. 2012). This case, however, is more complicated. Although Defendants do appear to have sought to

1  withdraw the reference after the Bankruptcy Court ruled against
2  them on certain matters, Defendants also repeatedly and expressly
3  indicated their lack of consent to bankruptcy court jurisdiction.
4  At the same time, Defendants knowingly continued to participate in
5  the bankruptcy court proceedings.  Given the complex history of
6  this case and its connection to other, related adversary
7  proceedings, the Bankruptcy Court is in the best position to
8  conduct the "deeply factbound analysis of the procedural history"
9  and determine evaluate whether Defendants' litigation conduct
10 constitutes consent to bankruptcy court jurisdiction.  <u>Wellness</u>,
11 135 S.Ct. at 1949; <u>see also</u> <u>Pringle</u>, 495 B.R. at 461 ("[O]nce a
12 party is alerted . . . to the potential risks of failing to raise
13 the issue of the tribunal's authority, there is a rebuttable
14 presumption that such failure to act was intentional, and that
15 further purposeful proceeding in the forum indicates consent."); <u>In
16 re Daniels-Head $ Assocs.</u>, 819 F.2d 914, 919 (9th Cir. 1987)
17 ("[C]onsent may be implied . . . from any act indicating a
18 willingness to have the bankruptcy court determine a claim."),
19 citing <u>In re Baldwin-United Corp.</u>, 48 B.R. 49, 54 (Bankr. S.D. Ohio
20 1985).  As one court has observed, "the right to seek Article III
21 adjudication can . . . invite litigation hijinks.  Courts
22 confronted with the thorny issue of implied consent to enter final
23 judgment are finely attuned to the concerns of litigation
24 misconduct . . . .  This concern is particularly acute where, as
25 here, a party seeks affirmative relief from the bankruptcy court
26 believing it might win and then cries foul . . . when it loses."
27 <u>True Traditions, LC v. Wu</u>, 552 B.R. 826, 837 (N.D. Cal. 2015).
28

5

Defendants' motion to withdraw the reference is therefore denied, without prejudice, absent findings of fact from the Bankruptcy Court regarding Defendants' implied consent.

Even if Defendants have not consented to bankruptcy court adjudication, withdrawal of the reference is not necessarily warranted at this juncture. Defendants concede that withdrawal of the reference is discretionary. See 28 U.S.C. § 157(d). "The standard for withdrawal is high and must be satisfied by the party seeking withdrawal." Rock Ridge Properties, Inc. v. Greenback Mortgage Fund, LLC., No. CIV. S-11-2547 KJM CKD, 2012 WL 346465 at *2 (E.D. Cal. Jan. 31, 2012). Relevant factors include judicial efficiency, costs to the parties, uniformity of bankruptcy administration, and the prevention of forum shopping. Sec. Farms v. Int'l Bhd. Of Teamsters, Chauffers, Warehousemen, & Helpers, 124 F.3d 999, 1008 (9th Cir. 1997). Other courts have also looked to whether the claims at issue are core or non-core and whether the claims are triable by a jury. See In re Daewoo Motor Am., Inc., 302 B.R. 308, 310 (C.D. Cal. 2003).

The court assumes, for the sake of argument, that Defendants have not waived their right to trial by jury. Indeed, Plaintiff does not suggest that Defendant Miller, at the very least, has waived any such right. That factor weighs in favor of withdrawal, as does the non-core nature of the proceedings. Id.

Those factors, however, are insufficient to tip the balance in favor of immediate withdrawal. First, and as Defendants acknowledge, "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court. Instead, the

bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters." In re Healthcentral.com, 504 F.3d 775, 787 (9th Cir. 2007) (internal citation omitted).  "[E]ven if a bankruptcy court were to rule on a dispositive motion, it would not affect a party's Seventh Amendment right to a jury trial, as these motions merely address whether trial is necessary at all." Id. (emphasis omitted).

    Second, immediate withdrawal would not help conserve judicial resources.  "Indeed, many courts prefer to delay withdrawal until the case is ready for trial to preserve judicial economy and efficiency." In re: KSL Media, Inc., No. CV 15-08748 AB, 2016 WL 74385 at *3 (C.D. Cal. Jan. 6, 2016).  As the Ninth Circuit explained, the bankruptcy court system "promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them.  Accordingly, . . . to require an action's immediate transfer to district court simply because there is a jury trial right . . . would effectively subvert this system.  Only by allowing the bankruptcy court to retain jurisdiction over the action until trial is actually ready do we ensure that our bankruptcy system is carried out." Healthcentral.com, 504 F.3d at 787-88 (internal citations and emphases omitted).

    Lastly, the possibility of forum shopping weighs against immediate withdrawal of the reference.  As alluded to above, Defendants have actively litigated this matter before the Bankruptcy Court, including by filing a potentially dispositive motion to dismiss and motion for summary judgment before that court.  Although this Court defers, for the time being, to the

Bankruptcy Court on the question whether that litigation activity constituted consent to jurisdiction, this Court is not persuaded that Defendants' efforts to proceed in this Court are not related to the Bankruptcy Court's denial of Defendants' motions.

For these reasons, Defendants' Motion to Withdraw the Reference is DENIED, without prejudice, until such time as this matter is ready for trial.

IT IS SO ORDERED.

Dated: October 7, 2016

DEAN D. PREGERSON
United States District Judge